Donald HATELEY, The Cambridge
Group, and Wendy Seretan,
Petitioners,

v.

SECURITIES AND EXCHANGE
COMMISSION, Respondent.

No. 91–70734.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 6, 1993.

Decided Oct. 18, 1993.

Donald Hateley, pro se.

Wendy Seretan, pro se.

Donald P. Hateley and Wendy Seretan, Santa Monica, CA, for petitioner The Cambridge Group, Inc.

Susan K. Straus, S.E.C., Washington, DC, for respondent.

Before: FARRIS, NORRIS, and REINHARDT, Circuit Judges.

## OPINION

REINHARDT, Circuit Judge:

Petitioners Donald Hateley, Wendy Seretan and The Cambridge Group, Inc. (collectively "Petitioners") challenge a decision by respondent Securities and Exchange Commission ("SEC") affirming a $55,000 disgorgement order imposed against them jointly and severally. We conclude that the amount of the disgorgement is excessive and unreasonable but deny the petition for review in all other respects.

## I. Background

The Cambridge Group, Inc. ("Cambridge") was a three-person broker-dealer securities firm and a member of the National Association of Securities Dealers, Inc. ("NASD").[1] Hateley and Seretan were officers and directors of the firm. Hateley served as president of the company while Seretan was executive-vice-president. Hateley was the sole-shareholder. In June 1985, while Hateley and Seretan were abroad enjoying their honeymoon, the firm's third director, Winston C. Sheppard, Jr., entered into a "finder's fee agreement" with Lawrence Jay Hold on behalf of Cambridge. The agreement, which was executed without the knowledge of the other two directors, provided that Hold would receive 90% of the commissions generated by all securities transactions he solicited for the firm. Sheppard, however, had no authority to enter such an arrangement. Nevertheless, when the newly-wed directors returned from their journey, they decided to honor the agreement with Hold for a 13-month term.

During the life of the agreement, the commissions generated by Hold totalled approximately $55,000. He received $49,437.50 and the firm retained $5,062.50.[2] Unfortunately, during the period he was soliciting for Cambridge, Hold was not registered with the NASD as a representative of the firm, a violation of the association's rules. Petitioners were aware that Hold was not registered with Cambridge.

After the agreement between Hold and Cambridge expired, a dispute arose over whether he was entitled to additional commissions. Hold filed a suit, which was ultimately unsuccessful, against the petitioners in California state court. In preparing their defense the petitioners uncovered several other violations of NASD rules by Hold. They then reported the initial violation as well as the others to the association. After an investigation, the Local Business Conduct Committee of the NASD ("the Committee") filed separate complaints against Hold and the petitioners. As far as the record reflects, no action was taken against Sheppard.

Following fruitless attempts to settle the matter, the Committee assessed penalties in the amount of $103,000 against petitioners, jointly and severally, and $64,000 against Hold. Although the Committee did not articulate the basis for those amounts, the SEC

---

1. The NASD is registered with the SEC as a securities association under Section 15A of the Securities and Exchange Act and is responsible for regulating its members, subject to SEC review.

2. Obviously, these numbers do not reflect exactly the 90/10 split of the commissions. Neither the record nor the parties account for the slight discrepancy.

has represented to us that the petitioners' penalty consisted of three $15,000 fines,[3] one against each of them, plus a $58,000 disgorgement order.[4] The sanction against Hold represented a $15,000 fine plus disgorgement of $49,000, roughly the amount he received under his arrangement with the firm.

Petitioners appealed their penalties to the NASD Board of Governors (the "Board"). The Board affirmed the Committee's basic findings but reduced the petitioners' sanctions to $55,000. What the Board did, as the SEC acknowledges, was to eliminate the $15,000 fines against each of the petitioners and merely require them to disgorge an amount equal to the commissions actually generated as a result of Hold's activities. Despite the reduction in the sanctions, the petitioners appealed to the SEC, arguing that the penalty was still excessive. The SEC affirmed the decision of the Board in all respects. Petitioners then filed a timely appeal of the SEC's order in this court pursuant to 15 U.S.C. section 78y(a)(1).

## II. Discussion

■■■ The primary issue before us is whether the SEC abused its discretion in affirming the $55,000 sanction imposed jointly and severally on the petitioners by the NASD Board.[5] *See Sorrell v. SEC,* 679 F.2d 1323, 1327 (9th Cir.1982) (SEC sanctions order reviewed for abuse of discretion). We will overturn an SEC sanctions order if it is either unwarranted in law or without justification in fact. *Carter v. SEC,* 726 F.2d 472, 474 (9th Cir.1983) (per curiam). A court may reduce an SEC sanction where its severity is not justified under the circumstances. *See Arthur Lipper Corp. v. SEC,* 547 F.2d 171, 183–85 (2d Cir.1977), *cert. denied,* 434 U.S.

1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978); *Beck v. SEC,* 430 F.2d 673, 674–75 (6th Cir. 1970). Petitioners raise two challenges to the sanctions order. First, they argue that the amount of the sanctions is unreasonable, excessive, and punitive rather than remedial in nature.[6] Second, they contend that it was improper for the NASD to impose joint and several liability upon them.

■■■ As to the first contention, because the Board eliminated the fines and left only the disgorgement portion of the penalty in effect, the only question we need answer is whether it was error to base disgorgement upon the total amount of commissions that were generated in connection with Hold's solicitations instead of upon the amount of commissions that Cambridge actually retained. The purpose of disgorgement is to deprive a person of "ill-gotten gains" and prevent unjust enrichment. *SEC v. Wang,* 944 F.2d 80, 85 (2d Cir.1991). There is no question that approximately $55,000 in commissions were generated as a result of Hold's unlawful solicitations for Cambridge. However, as the SEC concedes, petitioners actually *retained* only $5,062.50 as a result of their improper arrangement with Hold. The SEC argues that a $55,000 disgorgement was nevertheless appropriate because that was the amount of money received by Cambridge from Hold's transactions, and it was petitioners' choice to pay Hold 90% of those commissions.

We reject the SEC's argument. Petitioners were obligated under the very agreement that is the source of their liability in this case to pay Hold 90% of all commissions generated from his solicitations. We must view the agreement as a whole and cannot single out the aspects of it that are favorable to the

---

3. At the time, $15,000 was the maximum that could have been imposed for each violation of NASD rules. Art. V sec. 1. Each of the 14 transactions in which Hold engaged while working for Cambridge could have been considered a separate violation. *Sirianni v. SEC,* 677 F.2d 1284, 1289 (9th Cir.1982).

4. According to the SEC, the Committee overestimated the amount of commissions that Cambridge had received on account of Hold's solicitations by $3,000.

5. Petitioners additionally challenge the SEC's affirmance of the Board's finding that animosity between them and the NASD's counsel did not infect the administrative process. Because the SEC's factual finding on this issue is supported by substantial evidence, it is conclusive. 15 U.S.C. § 78y(a)(4).

6. Under 15 U.S.C. § 78s(e)(2) the SEC may reduce or cancel an NASD sanction if it *inter alia* is "excessive" or "oppressive".

SEC's position and disregard the parts that are not. The agreement provided for both the improper arrangement between Hold and the petitioners and the division of the commissions therefrom. Viewing that agreement as a whole, petitioners were entitled to retain, and did retain, only about 10% of the total commissions generated.

Hold was ordered to disgorge the approximately $50,000 in commissions that he received pursuant to the agreement. Therefore, had petitioners been ordered to surrender the $5,062.50 they retained under that agreement, all "ill-gotten gains" would have been disgorged. Instead, the NASD ordered the petitioners to disgorge an additional $50,000, thus duplicating the amount that Hold was required to surrender. All together, the petitioners and Hold were ordered to disgorge $105,000 in commissions even though they had obtained only a total of $55,000. We believe that the disgorgement order was unreasonable and excessive as to the petitioners, as well as unwarranted in fact. It amounted to more than ten times the amount of their unjust enrichment. Under the circumstances, we hold that the SEC abused its discretion in not setting it aside.

■ The SEC argues that because the NASD was authorized to impose a $15,000 fine per unlawful transaction against the petitioners (a maximum penalty of $210,000 in this case) any sanction less than that cannot be an abuse of discretion. What the maximum potential fine for petitioners' conduct could have been is beside the point. As the SEC has admitted, the $55,000 disgorgement order is not, in fact, a *fine* levied against the petitioners as *punishment* for their conduct. Rather it is the means by which the petitioners are required to remedy the unjust enrichment. The decision to impose a disgorgement remedy and not a fine in this case was a choice made by the NASD Board and affirmed by the SEC in its administrative expertise and we will not disturb that determination. *See Hinkle Northwest, Inc. v.*

*SEC,* 641 F.2d 1304, 1310 (9th Cir.1981). However, once disgorgement is selected as the method of sanction, the amount must be reasonable, *i.e.* approximately equal to the unjust enrichment. *See SEC v. Washington County Utility Dist.,* 676 F.2d 218, 227 n. 20 (6th Cir.1982) (where defendant received one-half of improperly obtained fees, disgorgement should be ordered in that amount). The amount is not reasonable here.

■ The NASD assessed liability joint and severally against the petitioners because it determined that they had acted collectively in violating the association's rules and because of the close relationship among the three of them. Petitioners contend that joint and several liability was inappropriate under section 20(a) of the Securities and Exchange Act.[7] This argument is without merit. As we have stated, section 20(a) is a means of imposing vicarious liability on controlling persons. *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1572–79 (9th Cir.1990) (en banc), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). While section 20(a) provides for joint and several liability between controlling and controlled persons, we are aware of no legal principle or case law suggesting that such liability is appropriate *only* where that relationship exists. In circumstances similar to those in this case, the SEC has concluded, without relying on section 20(a), that joint and several liability is appropriate. *See, e.g., In re J.V. Ace & Co.,* Release No. 28716, 1990 WL 322554, 1990 SEC Lexis 3732 (Dec. 21, 1990). Moreover, the NASD has imposed a joint and several disgorgement order in other cases. *See, e.g., In re Michael David Sweeney,* Release No. 29884, 1991 SEC Lexis 2455 (Oct. 30, 1991). Here, we find no abuse of discretion in the decision to impose joint and several liability.

## III. Conclusion

Because the amount the petitioners were ordered to disgorge was approximately ten

---

7. That section, codified at 15 U.S.C. § 78t, provides:

Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person as such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

times the amount of their unjust enrichment, we grant their petition for review in part and reduce the disgorgement sanction against them to $5,062.50 plus interest, with liability imposed jointly and severally. We find no other errors in the SEC's decision. Accordingly, the petition for review is **GRANTED in part** and **DENIED in part.** Each side shall bear its own costs.