# Application of the Double Jeopardy Clause to Disgorgement Orders Under the Federal Trade Commission Act

In a civil suit brought by the Federal Trade Commission challenging unfair trade practices, the Double Jeopardy Clause of the Fifth Amendment is not implicated by a judgment requiring restitution and ordering that, in the event restitution is impracticable, the defendant pay money to the United States Treasury.

April 9, 1998

MEMORANDUM OPINION FOR THE UNITED STATES ATTORNEY
FOR THE CENTRAL DISTRICT OF CALIFORNIA

This memorandum responds to your request[1] for an opinion whether, in a civil suit brought by the Federal Trade Commission ("FTC") challenging unfair trade practices, the Double Jeopardy Clause of the Fifth Amendment to the Constitution is implicated by a judgment requiring restitution and ordering that, in the event restitution is impracticable, the defendant pay money to the United States Treasury. We conclude that the provision you describe raises no double jeopardy concerns.

## I. Background

Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) (1994), authorizes the FTC to seek, and federal district courts to grant, preliminary and permanent injunctions against practices that violate any of the laws enforced by the FTC. The Courts of Appeals uniformly have held that this authority to issue injunctions carries with it the authority to impose the full range of equitable remedies, including rescission, restitution, and the like. *See, e.g., FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 468–69 (11th Cir. 1996) (holding that Section 13(b) empowers district courts to order disgorgement); *FTC v. Security Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1314 (8th Cir. 1991) (holding that section 13(b) empowers district courts to order restitution); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571–72 (7th Cir.) (same), *cert. denied*, 493 U.S. 954 (1989); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (holding that section 13(b) empowers district court to order rescission of contract and freezing of assets); *FTC v. Southwest Sunsites, Inc.*, 665 F.2d 711, 717–18 (5th Cir.) (holding that section 13(b) empowers district courts to order placement of funds in escrow), *cert. denied*, 456 U.S. 973 (1982). For purposes of this memorandum, we will assume that the district court's equitable authority extends to ordering the wrongdoer to disgorge ill-gotten gains even where it is not possible to reimburse the

---

[1] *See* Letter for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from Nora M. Manella, United States Attorney (Apr. 3, 1997)

consumers who were injured by the defendants'.wrongful conduct. *See Gem Mer-chandising Corp.*, 87 F.3d at 470 (concluding that disgorgement is an appropriate remedy under section 13(b); ''Further, because it is not always possible to dis-tribute the money to the victims of defendant's wrongdoing, a court may order the funds paid to the United States Treasury.''); *see also FTC v. Pantron I Corp.*, 33 F.3d 1088, 1103 & n.34 (9th Cir. 1994) (directing district court to order appro-priate monetary relief; noting that, if reimbursement of all consumers is imprac-tical or impossible, district court may order another remedy that requires defendant to disgorge its unjust enrichment), *cert. denied*, 514 U.S. 1083 (1995).

You have informed us that the FTC ''routinely'' includes the following provi-sion in settlements or judgments in civil cases brought under section 13(b):

> If the Commission, in its sole discretion, determines that redress is wholly or partially impracticable, any funds not so used shall be deposited in the United States Treasury.

An Assistant United States Attorney in your office has expressed concern that such a provision might create a double jeopardy problem if the United States Attorney's office later brings a criminal prosecution against the defendant based on the same conduct. We accordingly turn to that issue. The analysis that follows assumes that the monetary judgment imposed on the defendant is measured solely by the amount of money obtained by the defendant in violation of the Federal Trade Commission Act.

## II. Discussion

The Double Jeopardy Clause provides that no ''person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.'' U.S. Const. amend. V. The Supreme Court has interpreted the clause to prohibit successive criminal punishments as well as successive prosecutions for the same criminal offense. *See Hudson v. United States*, 522 U.S. 93, 98–99 (1997); *United States v. Ursery*, 518 U.S. 267, 273 (1996); *United States v. Dixon*, 509 U.S. 688, 696 (1993). The question is whether an order that requires a defendant to disgorge ill-gotten gains is or can be ''criminal punishment'' for purposes of the Double Jeopardy Clause.

Prior to the Supreme Court's recent decision in *Hudson*, two lines of authority created some uncertainty as to when a nominally civil penalty constitutes a criminal punishment for double jeopardy purposes. Under the approach of *United States v. Ward*, 448 U.S. 242 (1980), and its progeny, a court's first task is to determine whether the legislature, ''in establishing the penalizing mechanism, indicated either expressly or impliedly'' whether the penalty should be considered criminal or civil. *Id.* at 248. If the legislature '' 'has indicated an intention to

establish a civil penalty, [the court must] inquir[e] further whether the statutory scheme [is] so punitive either in purpose or effect' as to 'transfor[m] what was clearly intended as a civil remedy into a criminal penalty.' " *Hudson*, 522 U.S. at 99 (quoting *Ward*, 448 U.S. at 248–49, and *Rex Trailer Co. v. United States*, 350 U.S. 148, 154 (1956)) (last alteration in original). In determining whether Congress provided a sanction so punitive in purpose or effect as to transform a civil remedy into a criminal penalty, the *Ward* Court treated several factors identified in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), as useful guideposts. *See Ward*, 448 U.S. at 248–49. Those factors include whether the sanction: (1) "involves an affirmative disability or restraint"; (2) "has historically been regarded as a punishment"; (3) "comes into play only on a finding of *scienter*"; (4) will, in operation, "promote the traditional aims of punishment-retribution and deterrence"; (5) applies to behavior that is already a crime; (6) may rationally be connected to an alternative purpose; and (7) "appears excessive in relation to the alternative purpose." *Kennedy*, 372 U.S. at 168–69. The *Ward* Court emphasized that "only the clearest proof" would suffice to transform what Congress intended to be a civil remedy into a criminal penalty. 448 U.S. at 249 (internal quotation marks omitted).

A second and somewhat inconsistent line of cases is based on *United States v. Halper*, 490 U.S. 435 (1989). In *Halper*, the respondent had first been convicted under the criminal false claims statute, 18 U.S.C. § 287 (1994) for submitting 65 inflated Medicare claims, resulting in a total loss to the government of $585. The government then sought penalties under the civil False Claims Act, 31 U.S.C. §§ 3729–3731 (1994), for the same conduct. Because the statute in question required a penalty of $2000 for each claim, plus double damages, the total civil penalty exceeded $130,000. In analyzing the respondent's claim that the penalty constituted punishment for double jeopardy purposes, the Court minimized the importance of the fact that the penalty was imposed in a nominally civil proceeding. 490 U.S. at 447 (in a court's assessment whether penalty constitutes punishment, "the labels 'criminal' and 'civil' are not of paramount importance"). Instead, the Court focused on whether the penalty served the "familiar" goals of punishment: retribution and deterrence. *Id.* at 448. Because the penalty was "overwhelmingly disproportionate" to the damage caused by the respondent's conduct, and therefore could not be characterized as serving a purely remedial purpose, the Court concluded that the penalty constituted "punishment" for double jeopardy purposes. *Id.* at 449.

The Supreme Court recently revisited the issue of when a nominally civil penalty can constitute criminal punishment for double jeopardy purposes. In *Hudson v. United States*, 522 U.S. 93, the Court considered whether monetary penalties and occupational debarment orders imposed following an administrative proceeding for violations of federal banking statutes would bar later criminal prosecution of the same underlying conduct. The Court concluded that neither the mone-

tary assessments nor the occupational debarment orders implicated the Double Jeopardy Clause, because neither type of penalty constituted a "criminal punishment." *Hudson*, 522 U.S. at 104–05. In the course of its analysis, the Court largely reaffirmed the *Ward* approach and abandoned the *Halper* approach. The *Hudson* Court concluded that *Halper* had deviated from *Ward*'s "longstanding double jeopardy principles," first by failing to evaluate the statute on its face to determine whether the legislature intended to establish a civil penalty, and second by elevating one of the *Kennedy* factors—whether the sanction appears excessive in relation to its nonpunitive purposes—"to dispositive status." *Hudson*, 522 U.S. at 101.

Under the principles of *Ward* as reaffirmed in *Hudson*, an order disgorging funds obtained by a defendant in violation of the Federal Trade Commission Act— even one requiring the deposit of some or all of the funds in the United States Treasury—would not implicate the Double Jeopardy Clause. First, section 13(b) authorizes the FTC to invoke a district court's equitable powers. Nothing in section 13(b) denominates the available remedies as "civil," but a district court exercises its equitable powers within the context of a civil action. *See* Fed. R. Civ. P. 2 and advisory committee note 2; *SEC v. Palmisano*, 135 F.3d 860, 865–66 (2d Cir.) (rejecting, in light of *Hudson*, claim that disgorgement order violated double jeopardy; concluding that "[t]he disgorgement remedy, which has long been upheld as within the general equity powers granted to the district court [under the securities laws], has not been considered a criminal sanction") (internal citations omitted), *cert. denied*, 525 U.S. 1023 (1998).

Second, applying the *Kennedy* factors that are of relevance here, there is little evidence, let alone the "clearest proof" required by *Ward*, 448 U.S. at 249, and *Hudson*, 522 U.S at 104–05, that an equitable disgorgement order is so punitive in purpose or effect as to render it criminal. First, disgorgement has not historically been viewed as punishment. *Palmisano*, 135 F.3d at 865–66; *see also Hudson*, 522 U.S. at 104 (noting that "the payment of fixed or variable sums of money is a sanction which has been recognized as enforceable by civil proceedings since the original revenue law of 1789") (internal quotation marks and alterations omitted). Second, restitution may be ordered without proof of *scienter*, that is, without proof of the defendant's subjective intent to defraud. *Amy Travel Serv.*, 875 F.2d at 573–74. Third, while a district court's power to require disgorgement does promote one of the traditional aims of punishment—namely, deterrence— this remedy only puts the offender back in the *status quo ante*. As the Court noted in *Hudson*, deterrence "may serve civil as well as criminal goals." 522 U.S. at 105 (internal quotation marks omitted). Fourth, while the defendant's conduct may be criminal as well as in violation of the civil provisions of the Federal Trade Commission Act, this is not necessarily so. In any event, in *Ward*, the Supreme Court found the fact that the conduct in question was criminal as well as subject to civil penalties insufficient by itself to demonstrate a punitive purpose

or effect. *See* 448 U.S. at 249–50; *see also Hudson*, 522 U.S. at 105 (concluding that, although the conduct for which monetary penalties and debarment orders were imposed "may also be criminal," "[t]his fact is insufficient to render the . . . sanctions criminally punitive"). Fifth, a disgorgement order may rationally be connected to nonpunitive purposes. An order of disgorgement redresses damages sustained by the government or the public or ensures that a defendant not profit from his illegal acts. Finally, because the sanction is necessarily measured by the harm to the government or public, it cannot be excessive in relation to its nonpunitive purposes.

A number of Courts of Appeals have concluded in other contexts that a disgorgement order is not "criminal punishment" for double jeopardy purposes. *See, e.g., Palmisano*, 135 F.3d at 865–66 (concluding, post-*Hudson*, that disgorgement order issued under securities laws is not criminal punishment); *United States v. Gartner*, 93 F.3d 633, 635 (9th Cir.) (reaching same conclusion prior to *Hudson*), *cert. denied*, 519 U.S. 1047 (1996); *SEC v. Bilzerian*, 29 F.3d 689, 696 (D.C. Cir. 1994) (same); *United States v. Rogers*, 960 F. 2d 1501 (10th Cir.) (same), *cert. denied*, 506 U.S. 1035 (1992). We have found no case to the contrary and do not believe that the Supreme Court, particularly after *Hudson*, would arrive at any other conclusion. Since the rationale of these cases is that depriving a defendant of money obtained in violation of the law is not criminal punishment, it does not matter for double jeopardy purposes that the FTC is not able to provide restitution to the victims of the fraud. "[O]nce disgorgement is selected as the method of sanction, the amount must be reasonable, i.e. approximately equal to the unjust enrichment." *Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993). We conclude that, as long as this condition obtains, the provision in FTC judgments you have described does not implicate the Double Jeopardy Clause.

DAWN E. JOHNSEN
*Acting Assistant Attorney General*
*Office of Legal Counsel*
