**Mayer GATTEGNO, on behalf of himself and all others similarly situated, Plaintiff**

v.

**SPRINT CORPORATION and Sprint Spectrum, L.P., d/b/a Sprint PCS, Defendants**

No. CIV.A. 03–11887–REK.

United States District Court, D. Massachusetts.

Dec. 11, 2003.

---

Abraham Rappaport, Mager White & Goldstein, LLP, Coral Springs, FL, Ann D. White, Mager White & Goldstein LLP, Jenkintown, PA, David Pastor, Gilman and Pastor, LLP, Saugus, MA, Jayne A. Goldstein, Mager White & Goldstein, Coral Springs, FL, Lee Albert, Mager White & Goldstein, LLP, Michael J. Kane, Mager White & Goldstein LLP, Jenkintown, PA, William S. Rodgers, Jr, Mirick, O'Connell, Demallie & Lougee, LLP, Worcester, MA, for plaintiff.

Daniel D. Crabtree, Stinson Morrison Hecker LLP, Lee Lauridsen, Sprint Law Department, Mark D. Hinderks, Stinson Morrison Hecker LLP, Overland Park, KS, Travis A. Corder, Brown Rudnick Berlack Israels LLP, Wayne F. Dennison, Brown, Rudnick, Berlack & Israels LLP, Boston, William E. Hanna, Stinson Morrison Hecker LLP, Overland Park, KS, for Sprint Corporation, Sprint Spectrum, L.P., for Defendants.

## Opinion and Order

KEETON, Senior District Judge.

### I. Pending Matters

Pending before this court are matters related to the following filings:

(1) Defendants' Motion To Compel Arbitration and To Dismiss or Stay Proceedings (Docket No. 3, filed October 3, 2003), with Memorandum in Support of Defendants' Motion To Compel Arbitration and To Dismiss or Stay Proceedings (Docket No. 4, filed October 3, 2003), and Affidavit of Vincent P. Desantis (Docket No. 5, filed October 3, 2003);

(2) Plaintiffs' [sic] Motion To Remand (Docket No. 6, filed October 3, 2003), with Memorandum in Support of Motion To Remand (Docket No. 7, filed October 3, 2003), and Appendix of Unreported Authorities Submitted in Support of Plaintiff's Motion To Remand (Docket No. 8, filed October 3, 2003), and Letter from David Pastor with Additional Exhibits (Docket No. 17, filed December 1, 2003);

(3) Defendants' Memorandum Opposing Plaintiff's Motion To Remand (Docket No. 11, filed October 31, 2003), with Letter from Wayne Dennison with Additional Exhibit (Docket No. 18, filed December 3, 2003);

(4) Plaintiff's Assented to Motion for Extension of Time To Respond to Motion To Compel Arbitration (Docket No. 15, filed November 21, 2003);

(5) Plaintiff's Assented to Motion for Extension of Time To Respond to Motion To Compel Arbitration (Docket No. 16, filed November 25, 2003).

## II. Background

Defendants operate a nationwide wireless telephone network. Plaintiff alleges that on or about January 1, 2001, defendants began charging their customers a monthly fee as a separate line item entitled "USA Regulatory Obligations and Fees," which they now entitle "Federal E911." Plaintiff has filed this suit with respect to the collection of the "E911" fee.

On or about August 20, 2003, plaintiff commenced this action in Suffolk Superior Court in Massachusetts, alleging three state claims: (1) violation of Massachusetts General Laws chapter 93A; (2) unjust enrichment; and (3) "equitable relief." Defendants removed this case to this court under 28 U.S.C. § 1441 (Docket No. 1).

On October 3, 2003, plaintiff filed a motion to remand (Docket No. 6), to which defendants have responded (Docket No. 11).

Also on October 3, 2003, defendants filed a motion to compel arbitration and to dismiss or stay these proceedings (Docket No. 3). This court has previously approved two extensions of time for plaintiffs to file a response (Docket Nos. 10, 13). Plaintiff has now filed two assented to motions for additional time to respond to defendants' motion (Docket Nos. 15, 16).

At a hearing on December 2, 2003, this court received oral argument on plaintiff's motion to remand and plaintiff's assented to motions for extension of time.

## III. Plaintiff's Motion To Remand

### A. Legal Standard

As the Court of Appeals for the First Circuit has stated:

[D]efendants may remove an action from the state court in which it was filed to the appropriate federal district court, provided that the defendant can show some basis for federal jurisdiction .... The removal statute does not in itself create jurisdiction. Indeed, removal statutes are strictly construed, and defendants have the burden of showing the federal court's jurisdiction.

*Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999).

Defendants contend that both federal question jurisdiction and federal diversity jurisdiction exist in this case.

### B. Federal Question Jurisdiction

#### 1. Introduction

According to the Supreme Court:

The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.... The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (citation omitted).

Defendants concede that plaintiff has pleaded purely state claims. Accordingly, defendants acknowledge that plaintiff's complaint does not on its face give rise to federal question jurisdiction. Defendants contend, however, that federal question jurisdiction for this case can be found in two exceptions to the well-pleaded complaint rule: (1) a necessary element of one of plaintiff's well-pleaded state claims requires resolution of a substantial, disputed federal question; and (2) federal law completely preempts plaintiff's state claims.

I note that several federal district courts have decided similar contentions regarding federal question jurisdiction on motions to remand in factually similar cases. *E.g., Gregory v. Sprint Spectrum L.P.,* 03–CV–0676W (S.D. Cal. June 13, 2003); *Grimson v. Sprint Corp.,* No. 03–80523–CIV (S.D.Fla. July 18, 2003); *Solomon v. Sprint Spectrum L.P.,* No. 1:03 CV 1170 (N.D.Ohio Aug. 27, 2003); *Milner v. Sprint Spectrum L.P.,* No. 8:03–cv–1344–T–26TBM (M.D.Fla. Aug. 18, 2003); *Alport v. Sprint Corp.,* No. 03 C 6246, 2003 WL 22872134 (N.D.Ill.Dec.3, 2003). I note also, as plaintiff asserts, that the majority of these cases have been remanded. Contrary to plaintiff's contention, however, this latter fact provides this court only limited guidance. Many of these previous decisions required an interpretation of the complaint in the particular case. Such case-specific determinations have only limited use here, where I must read this particular complaint closely.

### 2. Substantial, Disputed Federal Question

"Even though state law creates [plaintiff's] causes of action, [his] case might still 'arise under' the laws of the United States if a well-pleaded complaint established that [his] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). It is important to note that, as the First Circuit has stated, "the very scope of [this] concept is unclear. Perhaps the best one can say is that this basis endures in principle but should be applied with caution and various qualifications." *Almond v. Capital Properties, Inc.,* 212 F.3d 20, 23 (1st Cir. 2000).

Defendants argue that plaintiff's unjust enrichment claim (Count II) requires resolution of a substantial federal question in dispute between the parties. Defendants contend:

> In Count II of the Complaint, on the theory of Unjust Enrichment plaintiff seeks to disgorge all money that Sprint collected on its Federal E911 surcharge. Although the Complaint stops just short of saying explicitly that Sprint lacked any right to impose that charge, plaintiff necessarily makes this assertion when he claims that Sprint has violated the Massachusetts E911 Act by collecting more than this law permits. Complaint at ¶¶ 25, 26. Thus, this assertion places an issue of federal law—whether Sprint had a FCC-established federal right under federal law to impose this surcharge on customers—at the heart of an element of plaintiff's state law claim. If the FCC conferred such a right on Sprint—and Sprint asserts that it did—Sprint could not have unjustly enriched itself as Massachusetts law defines that theory. The court can adjudicate that element and thus the cause of action itself only by deciding whether the FCC conferred a federal right on carriers to impose such a charge.

(Def.'s Memo. Opposing Pl., Docket No. 11, at 7.)

In short, defendants contend that plaintiff's unjust enrichment claim necessarily raises a substantial, disputed federal question regarding defendants' federal authorization to collect E911 fees.

I am not persuaded by defendants' contention for several reasons. First, as defendants concede, plaintiff's own statements do not challenge defendants' federal authorization to collect E911 fees. In his motion to remand, plaintiff asserted:

> Plaintiff is not alleging that Sprint does not have the legal authority to recover

its costs associated with implementation of E911. Rather, Plaintiff's claims are premised on the false, deceptive and misleading manner in which Sprint describes, bills and collects its Federal E911 Fee.

(Pl.'s Memo. to Remand, Docket No. 7, at 10.) Plaintiff reiterated this assertion at oral argument on December 2, 2003.

Second, defendants err in their assertion that plaintiff's claim that Sprint has violated the Massachusetts E911 Act necessitates resolution of a federal question. Whether Sprint violated the Massachusetts E911 Act can be determined simply by looking to the state Act and the facts of this case. The issue of whether federal law authorized defendants to charge more than, and effectively violate, the Massachusetts E911 Act arises only as a *defense* to plaintiff's claim. It is established that "[a] case may not be removed to federal court on the basis of a federal defense ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14, 103 S.Ct. 2841.

Third, plaintiff in fact challenges the characterization of the E911 fee as *mandatory*. Under the heading "Sprint's False, Misleading and Deceptive Practices" in his complaint, plaintiff states:

> On or about January 1, 2001, Sprint began charging its customers a monthly fee for implementation of E911 services set forth as a separate line item section of the billing statement. Sprint initially called this deceptive charge "USA Regulatory Obligations and Fees" and it now calls it "Federal E911." *In reality, this fee is not mandated by the government or any taxing authority.* Sprint fails to adequately disclose to its customers that it unilaterally sets this charge and that

> the charge is not imposed by any governmental entity.

(Complaint, Exhibit 8 to Docket No. 11, at ¶ 24 (emphasis added).) Defendants do not dispute that no *mandatory* fee exists; defendants dispute only that they had authority to charge an E911 fee at their *discretion*. Accordingly, plaintiff's claim does not raise a disputed federal question.

For these reasons, I conclude that this case does not raise a substantial, disputed federal question sufficient to establish federal question jurisdiction in the face of the well-pleaded complaint rule.

### 3. Complete Preemption

The doctrine of complete preemption also provides an exception to the well-pleaded complaint rule. According to the Supreme Court, "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Defendants contend that the Federal Communications Act (FCA) completely preempts plaintiff's state claims in this case. In response, plaintiff notes, correctly, that numerous courts have held that the FCA does not completely preempt claims throughout the telecommunications industry. *See, e.g., Marcus v. AT&T Corp.,* 138 F.3d 46, 54 (2d Cir.1998) (noting that the FCA does not completely preempt certain state law actions); *Minnesota v. Worldcom, Inc.,* 125 F.Supp.2d 365, 372 (D.Minn.2000) (same); *Bryceland v. AT & T Corp.,* 122 F.Supp.2d 703, 710 (N.D.Tex. 2000) (granting remand as "[a] careful reading of the FCA reveals no indicia of congressional intent to create removal jurisdiction").

Defendants, however, do not argue that the FCA completely preempts claims

*throughout* the telecommunications indus- try. Rather, defendants contend that the FCA completely preempts a narrow set of claims *within* the telecommunications in- dustry. In particular, defendants cite 47 U.S.C. § 332(c)(3)(A), which states that "no state or local government shall have any authority to regulate the entry or the rates charged by any [wireless carrier]." *Id.* Defendants argue that, under this pro- vision, the FCA completely preempts any claims regarding the entry or the rates charged by any wireless carrier. *See also Bastien v. AT&T Wireless Services, Inc.,* 205 F.3d 983 (7th Cir.2000) (holding that the FCA completely preempts rate claims).

But the Federal Communications Com- mission (FCC) has determined that states may implement systems for recovery of E911 costs incurred by wireless carriers. In a 1999 adjudication, the FCC stated:

> [C]arriers may ... recover all their [E911] costs ..., either through their own rates or through an explicit State- adopted mechanism.... We are not here limiting or prohibiting the States in the creation of cost recovery procedures that include carriers' expenses, or preempting any existing cost recovery legislation.

*In the Matter of Revision of the Commis- sion's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Sys- tems,* 14 F.C.C.R. 20850, 20872 (1999). And in a 2001 Opinion Letter that *defen- dants* cite, the FCC favorably cited its 1999 adjudication, which it explained in the following way:

> The Commission found that ... since wireless carrier rates are unregulated, there was no need for a government- mandated carrier cost recovery mecha- nism .... Nevertheless, the Commis- sion emphasized that states are free to have a carrier cost recovery mechanism in place if they so choose.

Opinion Letter by Thomas J. Sugrue, Chief of the Wireless Telecommunication Bureau of the Federal Communications Commission, at 2 n.4 (May 7, 2001), *aff'd, In the Matter of Revision of the Commis- sion's Rules To Ensure Compatibility with Enhanced 911 Emergency Calling Systems,* 17 F.C.C.R. 14,789 (2002).

■ Given the FCC's position, I must conclude that notwithstanding 47 U.S.C. § 332(c)(3)(A), the FCA does not com- pletely preempt claims regarding E911 fees, which are the fees in question here. I need not, and do not, decide defendants' contention regarding the preemptive effect of 47 U.S.C. § 332(c)(3)(A). I rule that the doctrine of complete preemption does not provide a basis for federal question juris- diction in this case.

## C. Federal Diversity Jurisdiction

Although not articulated in their opposi- tion to plaintiff's motion to remand, defen- dants contended both in their Notice of Removal (Docket No. 1) and at oral argu- ment on December 2, 2003 that this case meets the requirements for federal diversi- ty jurisdiction. Plaintiff contests that the case satisfies the $75,000 required amount- in-controversy.

Plaintiff has filed this suit as a class action. Neither party suggests that a claim by the plaintiff or any proposed class member exceeds $75,000. Defendants contend, however, that the claims of the members of the proposed class may be ag- gregated to meet the required amount-in- controversy.

■ As a general rule, the amount-in- controversy for a federal diversity jurisdic- tion may not be met by aggregating the claims of the members of a class. *Spiel- man v. Genzyme Corp.,* 251 F.3d 1, 7 (1st Cir.2001) (citing *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319

(1969)). An exception to the rule, however, has been recognized for situations where "several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest." *Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973).

Defendants argue that the exception applies to cases where plaintiffs seek a common fund. Citing *Berman v. Narragansett Racing Ass'n*, 414 F.2d 311 (1st Cir. 1969), defendants contend that "[w]hen the judgment would require an award of a fund to the class, then the amount of the entire fund, not what each class member's share will eventually be, should determine the amount in controversy." (Defs.' Notice of Removal, Docket No. 1, ¶ 20.)

And according to defendants, plaintiff and his proposed class seek here not only overcharges of each individual by defendants, but also all revenues earned on those individual overcharges. Defendants argue that the proposed class members do not have individual claims to the pool of earned revenues, thus creating a "common fund."

■ Defendants misstate the law. The focus should not be on the type of relief requested, but rather on the nature and value of the right asserted. *In re Ford Motor Co.*, 264 F.3d 952, 960 (9th Cir. 2001); *Pierson v. Source Perrier, S.A.*, 848 F.Supp. 1186, 1188 (E.D.Pa.1994). Thus, the issue turns not on whether plaintiffs seek a "common fund," but on whether plaintiffs bring the case based in individual claims or in an indivisible, common claim. In fact, the case that defendants cite specifically notes that "no contractual rights [were] created between the defendants and individual pursewinners [who had brought the suit], and plaintiffs make no specific claims for individual payment." *Berman*, 414 F.2d at 314.

■ The claims here are based in individual contractual relationships with defendants, and plaintiff and the proposed class do make specific claims for individual payment. I therefore conclude that the claims of the members of the proposed class may not be aggregated to meet the required amount-in-controversy.

I rule that this court may not exercise federal diversity jurisdiction over this case.

## D. Disposition

I have not found a basis for federal jurisdiction over this case. Accordingly, the Order below allows plaintiff's motion to remand.

## E. Costs

Plaintiff requests an award of costs and attorney's fees.

On granting a motion for remand, a federal court may, at its discretion, order the defendant to pay the plaintiff his "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

Plaintiff's basis for an award of costs and attorney's fees can be summarized as arguing that defendants removed this case despite the fact that "an overwhelming majority of remand decisions to date in cases containing similar claims against Sprint and its competitor, Nextel and removed on identical grounds, have been in favor of remand." (Pl.'s Mot. To Remand, Docket No. 6, at 2.)

I explained earlier in this Opinion, however, that the rulings in the "overwhelming majority of remand decisions ... in [similar] cases" have limited bearing on the merits of my decision here. Indeed, I conclude that defendants had a reasonable basis for removing this case.

I rule that an award of costs and attorneys fees is inappropriate here.

## IV. Other Motions

Defendants have filed a motion to compel and to dismiss or stay, and plaintiff has filed two assented to motions to extend his time to respond to defendants' motion. The rulings and conclusions in Part III of this Opinion render defendants' motion and plaintiff's motions moot.

### ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendants' Motion To Compel Arbitration and To Dismiss or Stay Proceedings (Docket No. 3) is DISMISSED as moot.

(2) Plaintiff's Assented to Motion for Extension of Time To Respond to Motion To Compel Arbitration (Docket No. 15) is DISMISSED as moot.

(3) Plaintiff's Assented to Motion for Extension of Time To Respond to Motion To Compel Arbitration (Docket No. 16) is DISMISSED as moot.

(4) Plaintiffs' [sic] Motion To Remand (Docket No. 6) is ALLOWED to the extent explained in the foregoing Memorandum. The Clerk is directed to return this matter to Suffolk Superior Court in Massachusetts.