In re **WIRELESS TELEPHONE RADIO FREQUENCY EMISSIONS PRODUCTS LIABILITY LITIGATION**

Murray, et al.

v.

Motorola, Inc. et al. (D.D.C.)

Schofield

v.

Matsushita Electric, et al. (D.D.C.)

Cochran, et al.

v.

Audiovox Corp., et al. (D.D.C.)

Keller, et al.

v.

Nokia, Inc., et al. (D.D.C.)

Schwamb, et al.

v.

Qualcomm, et al. (D.D.C.)

Agro, et al.

v.

Motorola, Inc., et al. (D.D.C.)

No. MDL. 1421.

Nos CIV. 01–MD–1421, CIV. CCB–02–4047, CIV. CCB–02–4048, CIV. CCB–02–4049, CIV. CCB–02–4050, CIV. CCB–02–4051, CIV. CCB–02–4052.

United States District Court, D. Maryland.

July 19, 2004.

John CM Angelos, Law Offices of Peter G. Angelos, Baltimore, MD, for Crystall Gilliam.

Peter G. Angelos, Law Offices of Peter G. Angelos, Baltimore, MD, for Patricia S. Colonell.

Ray M. Aragon, Raymond B. Biagini, McKenna Long and Aldridge LLP, Washington, DC, for Philips Electronic North America Corp.

Charles L. Babcock, Ryan C. Wirtz. David T. Moran, Jackson Walker LLP, Dallas, TX, Gregg Lewis Bernstein, Zuckermann Spaeder, LLP, Baltimore, MD, Denis J. Charlesworth, Ward Norris Heller and Reidy LLP, Rochester, NY, for Ericsson Wireless Communications, Inc.

Stewart A. Baker, Thomas M. Barba, Jennifer Quinn Barabanov, Stephen Anthony Fennell, Steptoe and Johnson LLP, Washington, DC, for AT&T Corp.

John Beisner, O'Melveny and Myers LLP, Washington, DC, Laura Owens, Alston and Bird, LLP, Atlanta, GA, Paul Farrell Strain, Venable Baetjer amd Howard, LLP, Baltimore, MD, for Verizon Communication, Inc.

Sheila L. Birnbaum, Skadden Arps Slate Meagher and Flom, LLP, New York City, Patrick R. Buckler, Law Office of McGuire Woods LLP, Baltimore, MD, Ronald M. Cherry, Law Offices of Ronald M. Cherry, Towson, MD, Edward M. Crane, David L. Hansel,an, Jr., Skaden Arps Slate Meagher and Flom LLP, Chicago, IL, for Nextel Communications, Inc.

Brian Paul Brooks, O'Melveny and Myers LLP, Washington, DC, Scott Elder, Jane Fugate Thorpe, Alston and Bird, LLP, M. King Hill, III, Venable Baerjer and Howard, LLP, Towson, MD, John Henry Lewin, Jr., Venable, Jr., Baltimore, MD, for Cellco Partnership.

Francis A. Citera, Greenberg Traurig, PPC, Chicago, IL, George C. Doub, III, George Cochran Doub, Jr., William H. Murphy, III, George C. Doub PC, Baltimore, MD, William Hughes Murphy, Jr., William H. Murphy, JR and Associates PA, Baltiomore, MD, for Qualcomm Inc.

Leslie Rae Cohen, Mark H. Kolman, Dickstein Shapiro Morin and Oshinsky LLP, for Audiovox Communications Corp.

Matthew T. Covell, Kevin B. Getzendanner, Arnall Golden Gregory LLP, Atlanta, GA, for Mitsubishi Wireless Communications Inc.

Richard Alan Dean, Tucker Ellis & West, LLP, Cleveland, OH, Charles L. Perry, Arter and Hadden, LLP, Dallas, TX, for Cellular One Group.

Seamus C. Duffy, Drinker Biddle and Reath, Philadelphia, PA, for Comcast/Metrophone.

Burton Finkelstein, Richard Maxwell Volin, Finkelstein Thompson and Loughran, Washington, DC, for Sarah Dahlgren.

James A. Frederick, Office of U.S. Atty., Baltimore, MD, Charles P. Goodell, Jr., Goodell DeVries Leech and Dann LLP, Baltimore, MD, Tamar B. Kelber, James W. Mizgala, Eugene A. Schoon, Sidley Austin Brown and Wood, Chicago, IL, for VoiceStream Wireless Corp.

Paul E. Freehling, Seyfarth Shaw LLP, Chicago, IL, for Telecommunication Industry Ass'n.

Winn C. Friddell, John J. Nagle, III, Bodie Nagle Dolina Smith and Hobbs PA, Towson, MD, Elwood E. Swam, Hampstead, MD, for C.E.I., Inc.

Adam Gonnelli, Faruqi and Faruqi, LLP, New York City, Carl B. Hillard, Jr., Law Office of Carl B. Hillard, Jr., Del Mar, CA, for Gibb Brower.

Scott A. Hanfling, Steven M. Laduzinsky, Kane Laduzinsky and Mendoza Ltd., Chicago, IL, for Cellular Telecommunications And Internet Ass'n.

Colleen A. Hartman, Steven J. Hewitson, Daniel S. Reinhardt, Troutman Sanders LLP, Atlanta, GA, for Southern Telecom, Inc.

Mark F. Horning, Steptoe and Johnson, LLP, Washington, DC, for AT&T Corp.

H. Thomas Howell, Howell and Getelym Baltimore, MD, for J. Douglas Pinney.

James B. Irwin, Brian P. Quirk, Irwin Fritchie Urquhart and Moore, LLC, New Orleans, LA, James P. Ulwick, Kramon and Graham, Baltimore, MD, for NEC America, Inc.

John Bucher Isbister, Tydings and Rosenberg, LLP, Baltimore, MD, Steven M. Zager, Akin Gump Strauss Haer and Feld, LLP, Austin, TX, Austin Tighe, Brobeck Phleger and Harrison LLP, Austin, TX, for Nokia, Inc.

Mark J. Jeansonne, Milling Benson Woodward, New Orleans, LA, John A. Stewart, Jr., Hulse and Wanek, New Orleans, LA, for Radifone.

Paul D. Krause, Laura Nachowitz Steel, Wilson Elser Moskowitz Edelman and Dicker, LLP, Washington, DC, for Matsushita Corp. of Americ.

Daniel R. Lanier, Alicia C. Reynolds, Miles and Stockbridge PC, Baltimore, MD, Paul H. Vishny, Seyfarth Shaw LLP, Chicago, IL, Nicole B d Arcambal, D Ancona and Pflaum LLC, Chicago, IL, for Telecommunication Industry Ass'n.

Glenn Edward Mintzer, Law Offices of Peter G. Angelos, Baltimore, MD, for Linda Barrell.

Michael D. Moeller, Paul S. Schleifman, Shook Hardy and Bacon, LLP, Washington, DC, J. Stan Sexton, Shook Hardy and Bacon LLP, Kansas City, MO, for Sprint PCS Ltd. Partnership.

Mayer Morganroth, Morganroth and Morganroth, PLLC, Southfield, MI, for Baldassare S. Agro.

Maureen E. Murphy, Murphy and Murphy LLC, Baltimore, MD, for Baltimore Business communications Inc.

John A. Pica, Jr., John A. Pica Jr PC, Annapolis, MD, H. Russell Smouse, Law Office of Peter G. Angelos, Baltimore, MD, for Patricia S. Colonell.

Tracy Diana Rezvani, Finkelstein Thompson and Loughran, Washington, DC, for Sarah Dahlgren.

Curtis S. Renner, Thomas C. Watson, Watson and Renner, Washington, DC, for Cingular Wireless.

Ralph A. Taylor, Jr., Bruce Kenneth Trauben, Dorsey and Whitney LLP, Washington, DC, for Institute of Electrical amd Electronic Engineers, Inc.

Kenneth L. Thompson, Michael E. Yaggy, Piper Rudnick LLP, Baltimore, MD, for Motorola Inc.

Harold M. Walter, Tydings and Rosenberg LLP, Baltimore, MD, for Samsung Electronics America, Inc.

Michael Weinstock, Weinstock and Scavo PC, Atlanta, GA, for Riedy Gimpelson.

Andrew M. Winick, Brown and Sheehan LLP, Baltimore, MD, for Sanyo North America, Inc.

## MEMORANDUM

BLAKE, District Judge.

On June 21, 2002, a consolidated and renewed motion for remand filed in the *Pinney, Farina, Gilliam, Gimpelson,* and *Naquin* actions in this multidistrict litigation was denied.[1] I held that federal question jurisdiction supported removal based on the substantial federal question doctrine. *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 216 F.Supp.2d 474 (D.Md.2002).[2] The prior remand decision did not address similar motions to remand now pending in the *Murray, Schofield, Cochran, Keller, Schwamb,* and *Agro* actions.[3] The plaintiffs filed these suits in the Superior Court for the District of Columbia, alleging state statutory and common law claims. The defendants filed notices of removal under 28 U.S.C. § 1441(b), asserting federal jurisdiction under several different theories, and the cases were removed to the United States District Court for the District of Columbia.[4] The Judicial Panel on Multidistrict Litigation subsequently transferred the cases to this court. The issues in the plaintiffs' motions to remand have been fully briefed and no hearing is necessary. *See* Local Rule 105.6.[5]

As with the *Pinney* complaints, the crux of the Morganroth complaints is that the defendants have negligently and fraudulently endangered consumers by providing wireless cell phones that emit unsafe levels of radio frequency radiation ("RFR"). The Morganroth complaints assert similar causes of action to those raised in the *Pinney* complaints: (1) intentional fraud and misrepresentation; (2) negligent misrepresentation; (3) strict product liability, and product liability for failure to warn and design defect; (4) negligence; (5) breach of express and implied warranties; (6) civil conspiracy; (7) violations of the District of Columbia Consumer Protection Act of 2000; and (8) civil battery.[6] Unlike the *Pinney* plaintiffs, however, the lead plaintiffs in the Morganroth complaints

---

1. The five class actions that were addressed in that decision are referred to collectively as the *"Pinney* complaints," *"Pinney* actions," or *"Pinney* plaintiffs."

2. The defendants in those five actions then filed a motion to dismiss under several theories of preemption, which was granted on March 5, 2003. *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.,* 248 F.Supp.2d 452 (D.Md.2003).

3. The plaintiffs in these six actions all are represented by the law firm of Morganroth & Morganroth, PLLC. The allegations in their complaints are essentially the same, with minor variations in the facts that are specific to each plaintiff. For purposes of this memorandum, the court will use the *Murray* complaint as representative of these six actions. These actions will be referred to collectively as the "Morganroth complaints," "Morganroth actions," or "Morganroth plaintiffs."

4. The motions to remand in the Morganroth actions were consolidated for briefing in the United States District Court for the District of Columbia, prior to their transfer to this court.

5. Also still pending are motions to remand in the *Brower* and *Dahlgren* actions, which are not addressed in this memorandum. *See infra* note 9.

6. Many of the Morganroth plaintiffs also seek relief for loss of consortium, where applicable.

have been diagnosed with brain cancer, which they attribute to exposure to RFR from the use of their cell phones.[7] While the *Pinney* plaintiffs' requests for relief were focused on the provision of headsets for use with their cell phones,[8] the Morganroth plaintiffs seek compensatory and consequential damages for the lead plaintiffs' brain injuries. Based on these critical factual differences, I will grant the plaintiffs' motions to remand the Morganroth actions to the Superior Court for the District of Columbia.[9]

## BACKGROUND

The comprehensive federal regulatory scheme governing the licensing and RFR emissions of cell phones was discussed in the court's earlier remand decision and need not be repeated in full here. *See Wireless Tel.*, 216 F.Supp.2d at 482–87. Most pertinent to this litigation, the Federal Communications Commission ("FCC") has issued regulations which set a maximum localized specific absorption rate ("SAR") for RFR emissions from cell phones, require cell phone manufacturers to perform routine environmental evaluation for RFR emissions prior to equipment authorization or use, and allow manufacturers to demonstrate compliance by "laboratory measurement techniques or by computational modeling." *See* 47 C.F.R. §§ 2.1091, 2.1093.[10] These regulations were adopted under authority derived from the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, as well as the Telecommunications Act of 1996, Pub.L. No. 104–104, § 704(b), 110 Stat. 56, 152. They are part of a comprehensive regulatory scheme which authorizes the FCC to set technical standards for wireless telecommunications, in order to achieve nationwide compatibility and to foster the growth of wireless services. *See Wireless Tel.*, 216 F.Supp.2d at 483–84.

7. The *Pinney* complaints were brought on behalf of purchasers of cell phones who were not furnished with a headset and "who have not been diagnosed with a brain related tumor or cancer of the eye," as well as all future purchasers who have not received such a diagnosis. (*Pinney* Compl. at ¶ 42.)

8. Specifically, the *Pinney* complaint sought: (1) compensatory damages for each class member to purchase a headset; (2) reimbursement for costs incurred by each class member in purchasing a headset; (3) injunctive relief to provide class members with a cell phone that could be used with a headset, instructions for a headset, and warnings about why a headset should be used; and (4) injunctive relief preventing the future sale of cell phones without headsets and appropriate instructions and warnings. (*Pinney* Compl. at ¶¶ 100, 109, 114, 121, 133, 142, 149, 163.) At a hearing before this court, the *Pinney* plaintiffs conceded that all of their requests for relief, even those for compensatory damages, amounted to a judicially-imposed requirement that manufacturers provide headsets with wireless cell phones. *See Wireless Tel.*, 216 F.Supp.2d at 491 n. 20.

9. The prior remand decision has been appealed to the Fourth Circuit, and the defendants support a stay of a decision on the pending remand motions until the Fourth Circuit issues a decision. The *Brower* plaintiffs agreed to a stay, and the *Dahlgren* plaintiff do not object. The Morganroth plaintiffs, however, oppose any further stay in the proceedings. Recognizing that the Morganroth actions involve distinguishable issues, a decision on these remand motions is warranted at this time.

10. As stated in the court's earlier opinion, " 'SAR is a measure of the rate of energy absorption due to exposure to an RF transmitting source.' " *Wireless Tel.*, 216 F.Supp.2d at 485 n. 7 (quoting 47 C.F.R. § 2.1093(d)). The RFR regulations are being implemented through the existing, comprehensive FCC system for equipment authorization and compliance monitoring. *See* 47 C.F.R. §§ 2.1093(d), 2.901, *et seq.* The defendants must comply with these requirements in order to make their phones available to the public.

The regulations on RFR emissions were issued by the FCC after careful consideration of the views of various federal health and safety agencies, and they reflect a consensus view of those agencies. *See id.* at 485–87. Particular weight was given to the views of the Food and Drug Administration ("FDA"), which has responsibility, under the Electronic Product Radiation Control Act, 21 U.S.C. § 360kk, in consultation with other agencies, for setting standards to protect the public health from electronic products that emit radiation. *See Wireless Tel.,* 216 F.Supp.2d at 485–87; *see also In re Procedures for Reviewing Requests for Relief from State and Local Regulations Pursuant to Section 332(c)(7)(B)(v) of the Communications Act of 1934,* 13 F.C.C.R. 7,268, at ¶¶ 5, 19, 30–31, 34, 36–39, 111, 114 (1997) (hereinafter *"FCC Second Order"*); *In re Guidelines For Evaluating the Envtl. Effects of Radiofrequency Radiation,* 11 F.C.C.R. 15,-123, at ¶¶ 2, 18, 28, 49, 62, 71, 73 (1996) (hereinafter *"FCC First Order"*); FCC & FDA, *Cell Phone Facts: Consumer Info. on Wireless Phones,* available at www.fda.gov/cellphones/qa.html.

As in the court's earlier opinion, it is necessary to review the plaintiffs' claims before determining whether those claims provide a basis for federal jurisdiction. The Morganroth actions are brought on behalf of individuals (and, in applicable cases, their spouses) who have purchased and used cell phones, have been diagnosed with brain cancer, and now are permanently disabled. (*Murray* Compl. at ¶ 22–30.) The lead plaintiffs allege that their brain injuries directly resulted from exposure to RFR emissions from their cell phones. (*Id.*) They seek compensatory, consequen-

tial, and punitive damages for their individual injuries. (*Id.* at ¶¶ 81, 87, 94, 101, 105, 112, 118, 131, 140, 148.) It is important to note that the Morganroth complaints are not brought as class actions.

As in the *Pinney* actions, the Morganroth plaintiffs allege that cell phones cause adverse health effects for users and are a "defective and dangerous" product, conclusions which are at odds with the FCC and FDA's own factual determinations.[11] (*Id.* at ¶¶ 29–30, 36–38, 42, 55, 90, 92, 110, 117.) They claim that the defendants have manipulated research about the health effects of RFR emissions from cell phones (*id.* at ¶¶ 43–44, 60, 121(b), 125), misled standards-setting bodies (*id.* at ¶¶ 45(b)-(e), 124), and sought to "co-opt" federal agencies and mislead and deceive governmental officials (*id.* at ¶¶ 45, 124). According to the complaints, the defendants have not adequately informed or disclosed to the public the potential adverse health effects of RFR emissions from cell phones (*id.* at ¶¶ 43, 44(a), 57–58, 60–61, 71, 74(a)-(b), (d), (g)-(h), 98, 103(b), (d)-(e), 121(a)-(c), 127), and have misled the public by representing that FCC-compliant cell phones are safe and cause no adverse health effects (*id.* at ¶¶ 55–59, 71–73, 74(c), 98, 107, 114, 126), and specifically by stating that "Federal governmental agencies" have found that cell phones do not "present a risk of harm to the user" (*id.* at ¶ 74(i)).

While the *Pinney* complaints focused on the manufacturers' failure to incorporate headsets into their cell phones, the Morganroth complaints allege in broader terms that the manufacturers have failed to incorporate various protective devices and design changes that could reduce RFR

---

11. The position of the FCC and the FDA can be summed up as follows: "The available scientific evidence does not show that any health problems are associated with using wireless phones. There is no proof, however, that wireless phones are absolutely safe."

FCC & FDA, *Cell Phone Facts: Consumer Information on Wireless Phones,* "Questions and Answers: Do wireless phones pose a health hazard?" *available at www.fda.gov/cellphones/qa.html.*

exposure. (*Id.* at ¶¶ 39, 46, 52, 74(e)-(f), 96, 103(c), 109, 121(d).) The Morganroth plaintiffs also allege that the current testing methods employed by the defendants for measuring SAR are not accurate or reliable and easily can be manipulated (*id.* at ¶¶ 40, 46–51, 61(d)-(h), 74(b), 97, 103(a), 121(a)),[12] and that the current SAR exposure limit is inadequate to protect human health (*id.* at ¶¶ 41, 73(b), 97).

As illustrated by these allegations, "the plaintiffs' suits, though couched in the language of state tort and contract law, have only one goal-to challenge in state court the validity and sufficiency of the federal regulations on radio frequency radiation from wireless phones." *Wireless Tel.*, 216 F.Supp.2d at 479. The gravamen of the Morganroth complaints is that federal safety regulations governing wireless cell phones permit the sale of a product that is unreasonably dangerous to consumers. In many respects the arguments in favor of exercising jurisdiction over these complaints are just as strong as in the *Pinney* actions. The Morganroth complaints involve distinguishable facts, however, requiring remand to state court.

### ANALYSIS

State court actions which originally could have been filed in federal court may be removed to federal court by the defendant pursuant to 28 U.S.C. § 1441. *Caterpillar. Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994). Section 1441 provides, in pertinent part, that "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Absent diversity of citizenship, the propriety of removal under § 1441 depends on whether the action is one "arising under the Constitution, laws, or treaties of the United States," as set forth by 28 U.S.C. § 1331. *Mulcahey*, 29 F.3d at 151.

■■■■ "[F]ederal question jurisdiction is determined by the well-pleaded complaint rule, which provides that the federal question must be presented on the face of the plaintiff's properly pleaded complaint to confer jurisdiction, and the plaintiff may avoid federal jurisdiction by relying exclusively on state law." *Owen v. Carpenters' Dist. Council*, 161 F.3d 767, 772 (4th Cir. 1998) (internal quotations and citation omitted). Ordinarily, therefore, the plaintiff as "the master of his complaint" may select a state forum by choosing to rely on state law claims only, even if the facts alleged also would support a claim under federal law. *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir.1996). Removal jurisdiction raises "significant federalism concerns," and therefore must be strictly construed. *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir.2004) (en banc) (quoting *Mulcahey*, 29 F.3d at 151). The burden of establishing federal jurisdiction is on the party seeking removal. *Id.* If the claim to federal jurisdiction is doubtful, then the court must remand the action to state court. *Id.*

---

12. The FCC regulations allow manufacturers to choose among available laboratory measurement techniques or computational modeling in order to demonstrate compliance with the SAR standard. *See* 47 C.F.R. § 2.1093(d)(3); *FCC First Order* at ¶¶ 65, 69–

70. The plaintiffs also allege that actual emissions levels from cell phones are higher than the reported SAR levels (*Murray* Compl. at ¶ 51), which are provided to the FCC as part of the equipment authorization process. *See* 47 C.F.R. § 2.1091(c), 2.1093(c)

Recognizing that the complaints do not on their face allege any federal claims, the defendants seek to invoke three removal doctrines to support federal question jurisdiction: substantial federal question, complete preemption, and artful pleading. The defendants also maintain that, in complying with the FCC's regulations on RFR emissions from wireless phones, they were "acting under" a federal officer for purposes of 28 U.S.C. § 1442(a)(1). Each of these potential bases for federal jurisdiction is considered below.

### I. Federal Officer Provision

■ The defendants argue that removal is proper under 28 U.S.C. § 1442(a)(1), which provides that a state court action may be removed by "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." In order to establish removal jurisdiction under this provision, the defendants must (1) raise a colorable federal defense to the plaintiffs' claims; (2) show that they were acting under the direction of a federal officer; and (3) demonstrate a causal nexus between plaintiffs' claims and acts they performed under color of federal authority. *Pack v. AC & S, Inc.*, 838 F.Supp. 1099, 1101 (D.Md.1993) (citing *Mesa v. California*, 489 U.S. 121, 124–25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989)); *see also Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F.Supp.2d 1144, 1149–50 (D.Colo.2002) (citing cases). As in the prior remand decision, the defendants have failed to meet the last two requirements.

In order for a defendant to be acting under color of federal authority, "[a] substantial degree of direct and detailed federal control over the defendant's work is required." *In re "Agent Orange" Prod. Liab. Litig.*, 304 F.Supp.2d 442, 447 (E.D.N.Y.2004). " 'Direct control' is established by showing strong government intervention and the possibility that a defendant will be sued in state court as a result of the federal control." *Pack*, 838 F.Supp. at 1103. In *Freiberg* the court explained:

The established rule is that removal by a person "acting under" a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's "direct orders or comprehensive and detailed regulations." *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 947 (E.D.N.Y.1992). It is not enough to prove only that "the relevant acts occurred under the general auspices of a federal office or officer" or that "a corporation participates in a regulated industry." *Id.* The official must have direct and detailed control over the defendant. *Good v. Armstrong World Indus., Inc.*, 914 F.Supp. 1125, 1128 (E.D.Pa.1996).

245 F.Supp.2d at 1152; *see also Arness v. Boeing N. Am., Inc.*, 997 F.Supp. 1268, 1273 (C.D.Cal.1998).

■ The defendants argue that removal under § 1442(a)(1) is proper because the FCC regulations specifically direct the defendants to manufacture, test, and sell only cell phones emitting approved levels of RFR. (*Murray* Def.'s Joint Opp. Mem., 3/8/02, at 41–45.) [13] The defendants have

---

**13.** The defendants have adopted the arguments initially raised in briefing on the motion to remand in the *Murray* action for all of the Morganroth actions. (Morganroth Defs.' Consol. Opp. Mem., 6/26/02, at 51.) Consolidated briefing in the Morganroth actions also raised the argument that defendants ANSI and the IEEE fall within the scope of the federal officer provision based on their roles in developing the SAR standard adopted by the FCC, citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424 (11th Cir.1996). (Morganroth Defs.' Consol. Opp. Mem., 6/26/02, at 46–51.) *Magnin* involved distinguishable facts, in which the FAA had delegated official duties to a private party pursuant to an express Congressional authorization. *See* 91 F.3d at 1428. In any event, this argument

not shown, however, that they were "acting under" federal officials with respect to the specific acts for which they are being sued. As to the testing process employed by the defendants, the FCC's general guidance that "[c]ompliance with SAR limits can be demonstrated by either laboratory measurement techniques or by computational modeling" is not sufficiently comprehensive or detailed to invoke the federal officer provision. 47 C.F.R. § 2.1093(d)(3). The Morganroth complaints also are based in large part on the defendants' failure to provide safety devices, warnings, or instructions to consumers. To support removal jurisdiction as to these allegations, the defendants must show not only that the phones were manufactured according to FCC specifications, but also that the FCC restricted or prohibited them from providing additional safeguards or information to consumers. *Cf. Faulk v. Owens–Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 663–64 (E.D.Tex.1999); *Arness*, 997 F.Supp. at 1275; *Ruffin v. Armco Steel Corp.*, 959 F.Supp. 770, 774 (S.D.Tex.1997), *opinion vacated by Ruffin v. Armco Steel Corp.*, 1999 WL 318023 (S.D.Tex.1999) (when the case was transferred by the Judicial Panel on Multidistrict Litigation). Defendants have failed to show this. Accordingly, removal based on the federal officer provision is improper.

## II. Artful Pleading

■ The defendants refer to the doctrine of "artful pleading" as supporting removal of the Morganroth complaints. This doctrine permits a court to look behind a complaint to determine whether a plaintiff is attempting to conceal the federal nature of his claim by fraud or obfuscation. *State of Md. v. Philip Morris Inc.*, 934 F.Supp. 173, 175 (D.Md.1996). As I noted in the prior remand decision, artful

pleading is not a separate removal doctrine, but rather refers to the manner in which some plaintiffs manage to plead claims that are actually federal (because they are either completely preempted, or based entirely on substantial federal questions) under state law. *Wireless Tel.*, 216 F.Supp.2d at 492–93. In such cases, a court need not "blind itself to the real gravamen of [the] claim." *Philip Morris*, 934 F.Supp. at 176 (quoting *In re Wiring Device Antitrust Litig.*, 498 F.Supp. 79, 82 (E.D.N.Y.1980)). Recent federal court decisions likewise have equated the doctrine of artful pleading with complete preemption or the substantial federal question doctrine. *See, e.g., Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041–42 (9th Cir.2003); *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490–91 (5th Cir.2002); *Alshrafi v. Am. Airlines, Inc.*, 321 F.Supp.2d 150, 154 (D.Mass.2004); *Cavette v. Mastercard Int'l, Inc.*, 282 F.Supp.2d 813, 816–17 (W.D.Tenn.2003).

■ Thus, the artful pleading doctrine can provide additional support for removal in cases in which federal jurisdiction is based on complete preemption or substantial federal question grounds, and where a plaintiff has pled a state law claim that is actually federal. In the *Pinney* actions the plaintiffs' artful pleading further warranted removal jurisdiction. *Wireless Tel.*, 216 F.Supp.2d at 492–93. Rather than directly attacking the FCC regulations in an appropriate federal forum, subject to "the restrictions imposed by the comprehensive regulatory scheme embodied in the Communications Act," those plaintiffs were pursuing stricter safety measures for cell phones under state tort law. *Cf. In re Comcast Cellular Telecomm. Litig.*, 949 F.Supp. 1193, 1204 (E.D.Pa.1996) (permitting removal of disguised rate challenge pursuant to artful pleading doctrine). If the court deter-

---

fails for the same reasons as the other argu-     ments cited by the defendants.

mines that the Morganroth plaintiffs, like the *Pinney* plaintiffs, are seeking to avoid the uniform determination of RFR safety standards in a federal forum by bringing substantially similar actions in state court, then the artful pleading doctrine will provide further support for removal jurisdiction. The doctrine does not provide an independent basis for removal.

## III. Complete Preemption

The defendants next argue that removal is proper on the basis of complete preemption. The complete preemption doctrine serves as an exception to the well-pleaded complaint rule, allowing removal of a state claim "when a federal statute wholly displaces the state-law cause of action." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003). Complete preemption is distinct from the defense of conflict preemption:

> Under ordinary or conflict preemption, "state laws that conflict with federal laws are preempted, and preemption is asserted as 'a federal defense to the plaintiff's suit.'" *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 186–87 (4th Cir.2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55(1987)). Because conflict preemption constitutes a defense to a cause of action, the Supreme Court has recognized that it normally "'does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." ' *Id.* (quoting *Taylor*, 481 U.S. at 63, 107 S.Ct. 1542).

*Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370–371 (4th Cir.

2003). By contrast, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Beneficial Nat'l Bank*, 539 U.S. at 8, 123 S.Ct. 2058. Such a claim "arises under" federal law for purposes of 28 U.S.C. § 1331, and thus is removable under 28 U.S.C. 1441. *Id.* In the Morganroth actions, as in the *Pinney* actions, the defendants argue that the plaintiffs' claims are completely preempted by two provisions of the Federal Communications Act ("FCA"): 47 U.S.C. §§ 332(c)(3) and 332(c)(7)(B)(iv).[14]

In the prior remand decision, I concluded that the defendants had not established the requisite factors for complete preemption. *Wireless Tel.*, 216 F.Supp.2d at 496–99. Since the *Wireless Telephone* opinion, the Supreme Court has restated and extended the doctrine of complete preemption. In *Beneficial National Bank*, 539 U.S. at 11, 123 S.Ct. 2058, the Court held that the federal National Bank Act completely preempts any state law claims for usury against national banks chartered under the Act. The Court stated that a claim is removable to federal court under the complete preemption doctrine when a federal statute "provide[s] the exclusive cause of action" for the claim. *Id.* at 8, 123 S.Ct. 2058. "[T]he proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable." *Id.* at 9 n. 5, 123 S.Ct. 2058. The Court emphasized that in the facts of that case, as well as in

**14.** 47 U.S.C. § 332(c)(3)(A) provides in relevant part: "[N]o State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(7)(B)(iv) provides: "No State or local government or instrumentality

thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions."

the two prior federal statutes under which the Court has recognized complete preemption, "the federal statutes at issue...set forth procedures and remedies governing the cause of action." *Id.* at 8, 9, 123 S.Ct. 2058.[15] Further supporting a finding of complete preemption under the National Bank Act is the special federal interest in ensuring that national banks are governed by uniform, national rules limiting their liability, and are protected from "possible unfriendly State legislation." *Id.* at 10–11, 123 S.Ct. 2058 (quoting *Tiffany v. Nat'l Bank of Mo.,* 85 U.S. 409, 18 Wall. 409, 412, 21 L.Ed. 862 (1873)).

■ After *Beneficial National Bank,* I offered the parties in the pending complaints an opportunity to comment on the implications of that decision for this litigation. The defendants correctly noted that the plaintiffs' arguments against complete preemption are weakened somewhat by *Beneficial National Bank,* because the complete preemption doctrine has been extended to another federal statute and specific Congressional intent to permit removal will not be required (Defs.' Letter of 6/20/03 at 2), two points relied on in the prior remand decision. *Wireless Tel.,* 216 F.Supp.2d at 494. I also agree that the defendants' position is strengthened somewhat by the emphasis in *Beneficial National Bank* on the unique interest in uniform national rules that limit the liability of federally-chartered national banks, an argument that resonates in this litigation as well. The need for national uniformity in the regulation of cell phone RFR emissions undoubtedly provides a strong argument for ordinary conflict preemption, *see Wireless Tel.,* 248 F.Supp.2d at 463–67, but this factor is not sufficient to overcome the lack of Congressional intent and other factors weighing against a finding of complete preemption.

As I noted in *Wireless Telephone,* 216 F.Supp.2d at 496, a number of federal district and appellate courts have concluded that the cited provisions of the FCA do not provide removal jurisdiction under a complete preemption theory. Even more recent decisions are in accord with this view, including several decisions since *Beneficial National Bank. See Gattegno v. Sprint Corp.,* 297 F.Supp.2d 372, 376–77 (D.Mass.2003); *Lewis v. Nextel Communications, Inc.,* 281 F.Supp.2d 1302, 1305–06 (N.D.Ala.2003); *Moriconi v. AT & T Wireless PCS, LLC,* 280 F.Supp.2d 867, 876–77 (E.D.Ark.2003); *Russell v. Sprint Corp.,* 264 F.Supp.2d 955, 961 (D.Kan.2003); *State ex rel. Nixon v. Nextel W. Corp.,* 248 F.Supp.2d 885, 891–93 (E.D.Mo.2003); *TPS Utilicom Servs., Inc. v. AT & T Corp.,* 223 F.Supp.2d 1089, 1100 (C.D.Cal. 2002); *Threadgill v. Cingular Wireless, LLC,* 223 F.Supp.2d 786, 788–89 (E.D.Tex. 2002). A contrary decision finding complete preemption under section 332(c)(3)(A), *Bastien v. AT & T Wireless Services, Inc.,* 205 F.3d 983 (7th Cir.2000), since has been limited by *Fedor v. Cingular Wireless Corp.,* 355 F.3d 1069, 1072–74 (7th Cir.2004), which held that state law claims for breach of contract, consumer fraud, and unjust enrichment based on allegations of improper billing fall outside of the scope of section 332(c)(3)(A) and thus are not preempted.[16]

15. The other two federal statutes are the Labor Management Relations Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act, 29 U.S.C. § 1132. The Supreme Court also has held that possessory land claims under state law brought by Indian tribes are federal claims, "because of the uniquely federal nature and source of the possessory rights of Indian tribes." *Beneficial Nat'l Bank,* 539 U.S. at 8 n. 4, 123 S.Ct. 2058 (internal quotation marks omitted).

16. The defendants in this litigation have relied on *Bastien* in their briefs. (*See, e.g.,*

The plaintiffs raise several possible arguments against a finding of complete preemption in these actions, which the court previously has recognized. First, the plaintiffs' claims do not easily fit within the narrowly-drawn terms of sections 332(c)(3)(A) and 332(c)(7)(B)(iv). *See Wireless Tel.*, 216 F.Supp.2d at 497. The narrow scope of these provisions is illustrated further by the recent decision in *Fedor.* Second, most courts will not find complete preemption unless the federal statute at issue contains a civil enforcement provision that encompasses the plaintiff's claims. *See. e.g., King v. Marriott Int'l. Inc.*, 337 F.3d 421, 425, 427–28 (4th Cir.2003); *cf. Beneficial Nat'l Bank*, 539 U.S. at 8, 9, 123 S.Ct. 2058. As I noted in the prior remand decision, there are serious questions whether the state law claims raised in this litigation fall within the civil enforcement provisions of the FCA. *See Wireless Tel.*, 216 F.Supp.2d at 496 n. 22. This is an even greater concern for the Morganroth actions than in the *Pinney* actions, because of the apparent lack of any federal remedy that would provide the compensatory damages sought by these plaintiffs, as discussed *infra.* As the plaintiffs note, the lack of an available remedy would distinguish this litigation from *Beneficial National Bank.*

I do not need to resolve these specific arguments, because the cited provisions of the FCA do not evidence Congressional intent to completely preempt state law claims. In *Beneficial National Bank*, 539 U.S. at 9–11, 123 S.Ct. 2058, the Court confirmed that Congressional intent remains the critical inquiry, now stated as intent for the federal statute to provide the exclusive cause of action. The FCA provisions cited by the defendants preserve significant authority for state and local governments, which is inconsistent with Congressional intent to completely preempt state law claims. *See Lewis*, 281 F.Supp.2d at 1306 (holding, in a post-*Beneficial National Bank* decision, that § 332(c)(3)(A) does not completely preempt state law claims, relying in part on its limited statutory language); *Moriconi*, 280 F.Supp.2d at 874 (same).[17] Moreover, unlike the National Bank Act and the two other federal statutes under which the Supreme Court has found complete preemption, the FCA contains a savings clause providing: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. § 414. *See Lewis*, 281 F.Supp.2d at 1305–06 (relying in part on the FCA's savings clause to deny complete preemption under § 332(c)(3)(A)); *Moriconi*, 280 F.Supp.2d at 874 (same). Congressional intent remains critical in the wake of *Beneficial National Bank*, and bars a finding of complete preemption under the cited provisions of the FCA over the Morganroth complaints.

## IV. Substantial Federal Question Jurisdiction

■ The exercise of federal jurisdiction in the prior remand decision rested on the substantial federal question doctrine. This exception to the well-pleaded complaint rule applies only to the "small class of cases where, even though the cause of action is not created by federal law, the case's resolution depends on resolution of a federal question sufficiently substantial to

Morganroth Defs.' Consol. Opp. Mem. at 6, 8, 21.)

**17.** Section 332(c)(3)(A) expressly preserves state and local authority over "other terms and conditions of commercial mobile services." Section 332(c)(7)(A) expressly preserves state and local authority "over decisions regarding the placement, construction, and modification of personal wireless service facilities."

arise under federal law within the meaning of 28 U.S.C. § 1331." *Dixon*, 369 F.3d at 816 (quoting *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir.1996)).[18] The doctrine permits removal where "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Interstate Petroleum Corp. v. Morgan*, 249 F.3d 215, 219 (4th Cir.2001) (en banc) (quoting *Franchise Tax Bd.*, 463 U.S. at 27, 103 S.Ct. 2841). Even the presence of a substantial federal question will not justify removal unless "*every* legal theory supporting the claim requires the resolution of a federal issue." *Dixon*, 369 F.3d at 816. "[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist." *Mulcahey*, 29 F.3d at 153 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 811, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)).

Whether a federal issue is sufficiently substantial turns on "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote." *Mulcahey*, 29 F.3d at 152 (quoting *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 n. 11, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). "The determination of whether a federal issue is sufficiently substantial should be informed by a sensitive judgment about whether the existence of federal judicial power is both appropriate and pragmatic." *Ormet*, 98 F.3d at 807 (citing *Merrell Dow*, 478 U.S. at 813–14, 106 S.Ct. 3229). This judgment may

be informed by an interest in uniform interpretation in certain areas of federal law:

> Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts.

*Ormet*, 98 F.3d at 807. In *Ormet*, the plaintiff's claim turned on the meaning of terms used in the federal Clean Air Act, and the Fourth Circuit expressed concern that differing state interpretations could undermine the comprehensive regulatory scheme for pollution emissions allowances established under the Act and its implementing regulations. *See id.* at 807; *but cf. Merrell Dow*, 478 U.S. at 815–16, 106 S.Ct. 3229 (rejecting the plaintiff's argument that federal removal jurisdiction was justified because of "a powerful federal interest in seeing that [the federal Food, Drug, and Cosmetic Act] is given uniform interpretations").[19]

In *Merrell Dow*, the Supreme Court recognized a significant limitation on the scope of the substantial federal question doctrine, holding that a state law claim alleging a violation of a federal statute as an element is not removable when Congress has not provided a private federal remedy for such a violation. *See* 478 U.S. at 817, 106 S.Ct. 3229. The Court reasoned:

> [T]he congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion

---

18. The Court in *Beneficial* did not mention the presence of a substantial federal question as a ground for removal. *See Beneficial National Bank*, 539 U.S. at 8 & n. 4, 123 S.Ct. 2058. As the Fourth Circuit, however, continues to recognize this basis for removal, I shall do the same.

19. The First Circuit recently declined to reach the same result as *Ormet* in a case involving a similar issue under the Clean Water Act, concluding that the federal issue was not substantial enough to confer removal jurisdiction. *See Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc.*, 352 F.3d 33, 39–41 (1st Cir.2003).

that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently "substantial" to confer federal-question jurisdiction.

*Id.* at 814, 106 S.Ct. 3229. In such a case, it would "flout, or at least undermine congressional intent to conclude that the federal courts might nevertheless exercise federal-question jurisdiction" based on the incorporation of this federal question into a state law claim. *Id.* at 812, 106 S.Ct. 3229. The Fourth Circuit has extended this logic to bar removal of a state law claim incorporating a federal statute even when that statute provides a private right of action, if the plaintiff is procedurally or substantively barred from proceeding directly under the federal statute in question. *See Dixon*, 369 F.3d at 819; *Mulcahey*, 29 F.3d at 152–53.

In the prior remand decision, I held that federal question jurisdiction could be exercised over the *Pinney* actions under the substantial federal question doctrine, because the plaintiffs' complaints raised substantial issues under the FCA and the FCC's implementing regulations on RFR emissions from cell phones. *Wireless Tel.,* 216 F.Supp.2d at 482–92. Based on the narrow definition of the class and the relief requested, it was apparent that the goal of those class actions was to attack the FCC regulations for not requiring that cell phones come equipped with headsets. *Id.* at 488–89. The FCC has already considered and rejected a headset requirement, *id.* at 489 & n. 17, and indeed has warned

that some shielding devices can lead to an increase in RF absorption.[20] I recognized that "the risk of fifty different states articulating fifty different rules about whether and to what extent they may set RF safety standards could create market instability and prevent the maintenance of an unimpeded national network of rapid and efficient telecommunications service." *Id.* at 491. Under these circumstances, as in *Ormet,* "the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts." *Id.* at 490 (quoting *Ormet,* 98 F.3d at 807).

In this respect the arguments in favor of exercising removal jurisdiction over the Morganroth complaints are just as strong. As in the *Pinney* actions, these complaints "put the validity of the federal regulations, and the process by which they were developed, directly into dispute." *Id.* at 488. For example, the Morganroth plaintiffs' claims for product liability, breach of express and implied warranties, and negligence are supported by three theories, each of which implicates the current FCC regulations: the defendants' alleged failures to develop adequate SAR exposure limits and reliable testing methods for SAR (*Murray* Compl. at ¶ 97, 103(a)), to provide adequate warnings or instructions to consumers regarding RFR emissions from their cell phones (*id.* at ¶ 98, 103(b), (d), (e), 109), and to incorporate safety devices into cell phone designs (*id.* at ¶ 96, 103(c), 109). Under each of these theories and causes of action, necessary elements of the plaintiffs' claims may well require a

**20.** The current FDA/FCC joint website on cell phone safety addresses and rejects the need for headsets, stating "there is no reason to believe that hands-free kits reduce risks" because "there are no known risks from exposure to RF emissions from wireless phones." FCC & FDA, *Cell Phone Facts: Consumer Information on Wireless Phones,* "Questions and Answers: Do hands-free kits for wireless phones reduce risks from exposure to RF

emissions?" *available at www.fda.gov/cell-phones/qa.html.* The website makes the same point against phone accessories that claim to shield the head from RFR emissions, and also notes that "[s]tudies have shown that these products generally do not work as advertised" and may lead to an increase in RF absorption. *Id.* at "Questions and Answers: Do wireless phone accessories that claim to shield the head from RF radiation work?"

court to determine if provisions of the FCC regulations-the SAR exposure limit and the allowance for various testing methods-render cell phones defective and unreasonably dangerous, or not safe as expressly warranted, or not safe enough to meet a reasonable standard of care, such that the defendants can be held liable and/or required to provide additional or different safety devices or warnings or instructions. *See, e.g., Webster v. Pacesetter, Inc.,* 259 F.Supp.2d 27, 38 (D.D.C.2003); *Word v. Potomac Elec. Power Co.,* 742 A.2d 452, 459–60 (D.C.1999); *Johnson v. District of Columbia,* 728 A.2d 70, 77 n. 3 (D.C.1999); *McNeil Pharm. v. Hawkins,* 686 A.2d 567, 578 (D.C.1996); D.C.Code Ann. §§ 28:2–313, 28:2–314. The plaintiffs' right to relief under these claims thus would depend on "a court evaluating the validity and sufficiency of the federal standards." *Wireless Tel.,* 216 F.Supp.2d at 491.

▇▇▇ The critical difference between the Morganroth complaints and the *Pinney* actions, which compels a different result, is the presence of plaintiffs who are seeking compensation for physical injuries allegedly caused by exposure to RFR emissions from their cell phones. In the *Pinney* complaints, the proposed classes were limited to plaintiffs who had not been provided with a headset and did not allege personal injuries, and their requested relief focused solely on the provision of headsets. These limitations in the *Pinney* actions were important in two respects. First, the *Pinney* plaintiffs could not establish that any of their claims were supported by an alternative state law theory which would not require the resolution of any federal questions, which might have required remand. *See Wireless Tel.,* 216 F.Supp.2d at 491–92; *cf. Dixon,* 369 F.3d

at 817–18. Each count of each complaint raised a substantial federal question, by requesting the imposition of a state equipment requirement for cell phones, necessarily drawing into dispute the rejection of such a requirement by the FCC.

Second, the *Pinney* plaintiffs had several private federal remedies available which could have resulted in a headset requirement or comparable relief. They could have filed a petition for reconsideration to challenge the FCC's final regulations, *see* 47 C.F.R. § 1.429(a), or could have filed a petition with the FCC to amend or repeal the existing regulations and/or issue new regulations. *See id.* § 1.401(a). A similar action could have been brought under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 706. In any of these actions, the plaintiffs could have raised many of the same arguments that were made in their complaints. *Cf. Cellular Phone Taskforce v. FCC,* 205 F.3d 82, 88 (2d Cir.2000) (considering a challenge under the APA to the FCC regulations); *FCC Second Order* at ¶¶ 2, 18, 25, 31–32, 39 (considering petitions for reconsideration to strengthen the RFR exposure limits). I relied on the availability of these private federal remedies to distinguish the *Pinney* complaints from *Merrell Dow* and subsequent cases, which hold that the absence of a private federal remedy for the federal question raised in a plaintiff's claim indicates that the question is not sufficiently substantial to warrant removal jurisdiction. *See Wireless Tel.,* 216 F.Supp.2d at 481 n. 4; *see also Merrell Dow,* 478 U.S. at 814, 106 S.Ct. 3229; *Dixon,* 369 F.3d at 819; *Mulcahey,* 29 F.3d at 152–53.

The Morganroth complaints only seek monetary damages for personal injuries, however, and thus parallel the factual situation in *Mulcahey.*[21] In that case, the

---

**21.** Although the factual situations are parallel in this respect, there is a significant distinction between the Morganroth state law claims

and those in *Mulcahey* and *Merrell Dow.* The Morganroth plaintiffs are challenging the adequacy of a federal regulation. In *Mulcahey*

plaintiffs alleged a state law claim for negligence per se based on violations of federal environmental laws, and sought compensatory damages and injunctive relief. *Mulcahey*, 29 F.3d at 149–150. Although the cited federal statutes could have provided the plaintiffs with prospective enforcement relief or recovery of response costs, they would not have provided compensatory damages for past injuries. *Id.* at 150 & n. 3. The Fourth Circuit remanded under *Merrell Dow*, based in part on the fact that the private federal remedies that were available could not provide the requested monetary damages. *Id.* at 152–53. The court reasoned that "because the remedy sought is unavailable here, 'a private cause of action' under *Merrell Dow* does not, in truth, exist." *Id. See also Wander v. Kaus*, 304 F.3d 856, 859 (9th Cir.2002) (remanding claim for damages under a state law which incorporated a violation of the federal Americans with Disabilities Act as a violation of state law, because the only federal remedy available was for injunctive relief rather than compensatory damages); *Jairath v. Dyer*, 154 F.3d 1280, 1284 (11th Cir.1998) (same); *Wagner v. Regent Inv., Inc.*, 903 F.Supp. 966, 969–70 (E.D.Va.1995) (remanding where a violation of the Americans with Disabilities Act was claimed to be negligence per se in a state tort law action); *Handyman Network, Inc. v. Westinghouse Savannah River Co.*, 868 F.Supp. 151, 154 (D.S.C.1994) (remanding state tort and contract claims premised on violations of federal wage and benefits laws and seeking compensatory damages, not-

ing that no private federal remedy for compensatory damages is available). The same argument applies to the Morganroth complaints-because the plaintiffs cannot recover compensatory damages under any available federal remedy, a private federal action does not exist as to their claims, and remand is required under *Merrell Dow* and *Mulcahey*.

The defendants suggest that the plaintiffs could seek compensatory damages under the FCA's civil enforcement provisions, 47 U.S.C. §§ 201(b), 206, and 207,[22] but there are serious doubts as to whether a cause of action under these provisions could compensate the plaintiffs for their personal injuries. Section 201(b) typically is invoked by private plaintiffs to challenge the rates or terms offered by telecommunications providers. *See Boomer v. AT & T Corp.*, 309 F.3d 404, 420 n. 9 (7th Cir.2002) (recognizing that § 201(b) could be used to challenge arbitration clause in long-distance service contract); *Hi–Tech Furnace Sys., Inc. v. FCC*, 224 F.3d 781, 784–85 (D.C.Cir.2000) (challenging change to terms of free long-distance calling program); *Gilmore v. Southwestern Bell Mobile Sys., Inc.*, 156 F.Supp.2d 916, 924 (N.D.Ill.2001) (challenging cell phone provider's "administrative" fee); *Lilley v. Paging Network of Ohio, Inc.*, 100 F.Supp.2d 1144, 1145 (S.D.Ohio 2000) (challenging change to terms of paging service contract); *cf. Bryceland v. AT & T Corp.*, 122 F.Supp.2d 703, 708–09 (N.D.Tex.2000) (finding that complaints regarding quality of wireless phone service

and *Merrell Dow* the plaintiffs affirmed the adequacy of federal law, by relying on alleged violations of federal law to pursue state law causes of action. While this distinction may affect the ultimate disposition of the claims, it does not support removal where the only relief sought is not available under federal law.

**22.** Section 201(b) broadly prohibits any charge, practice, classification, or regulation

"that is unjust or unreasonable." Section 206 provides that a common carrier that violates any prohibition in the FCA is liable to injured persons for the full amount of damages sustained as a result, and section 207 provides that such injured persons may file a complaint with the FCC or file suit in federal district court.

could be brought under § 201(b)); *Him-melman v. MCI Communications Corp.,* 104 F.Supp.2d 1, 5–6 (D.D.C.2000) (reviewing complaints regarding manner in which directory assistance is provided under § 201(b)). Several courts have concluded that section 201(b) does not encompass claims for false advertising or consumer fraud, even when these claims are related to rates or billing practices. *See Gilmore,* 156 F.Supp.2d at 924–25 (holding that state law fraud claim based on nondisclosure of rate information is not a claim under the FCA); *Minnesota ex rel. Hatch v. Worldcom. Inc.,* 125 F.Supp.2d 365, 372 (D.Minn.2000) (holding that the FCA does not completely preempt state law claims for false advertising of long-distance rates, noting that the claim does not fall within the FCA's civil enforcement provisions); *Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc.,* 958 F.Supp. 947, 955–56 (D.Del.1997) (finding that claim alleging provider failed to disclose a billing practice does not fall within the scope of section 201(b)); *cf. Rivera–Lebron v. Cellular One,* 13 F.Supp.2d 235, 240–41 (D.P.R. 1998) (holding that allegations that plaintiffs were incorrectly issued a cell phone and billed at the wrong address fails to state a claim under the FCA). The defendants cannot cite any case in which plaintiffs proceeding under the FCA have been able to recover compensatory damages for personal injuries.

In the face of this uncertain authority, I am mindful of the Fourth Circuit's recently reiterated admonition that removal jurisdiction must be strictly construed, and that remand to state court is required if federal jurisdiction is doubtful. *See Dixon,* 369 F.3d at 816. The defendants have not carried their burden of establishing removal jurisdiction under the substantial federal question doctrine, because they have failed to demonstrate the availability of a private federal remedy addressing the federal questions raised in the Morganroth complaints.

## V.

For the reasons stated above, the *Murray, Schofield, Cochran, Keller, Schwamb,* and *Agro* complaints will be remanded to the Superior Court for the District of Columbia.

A separate order follows.

## *ORDER*

For the reasons stated in the accompanying Memorandum, it is hereby Ordered that:

1. the plaintiffs' motions to remand in the *Murray* (docket no. 8), *Schofield* (docket no. 7), *Cochran* (docket no. 11), *Keller* (docket no. 10), *Schwamb* (docket no. 15), and *Agro* (docket no. 12) actions are **GRANTED;**

2. these cases shall be **REMANDED** to the Superior Court for the District of Columbia;

3. copies of this Order and the accompanying Memorandum shall be sent to counsel of record; and

4. in accordance with this order, the clerk of the court shall **CLOSE** the *Murray, Schofield, Cochran, Keller, Schwamb,* and *Agro* actions.